AO 108 (Rev. 06/09) Application for a Warrant to Seize Property Subject to Forfeiture

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

In the Matter of the Seizure of )
*(Briefly describe the property to be seized)* )
$186,645 of U.S. Currency. ) Case No. **25-MR-455**
)
)

## APPLICATION FOR A WARRANT
## TO SEIZE PROPERTY SUBJECT TO FORFEITURE

I, a federal law enforcement officer or attorney for the government, request a seizure warrant and state under penalty of perjury that I have reason to believe that the following property in the _____ District of __New Mexico__ is subject to forfeiture to the United States of America under __21__ U.S.C. § __881(a)(6)__ *(describe the property)*:

$186,645 of U.S. currency seized from Rosie Marie PADILLA on February 18, 2025.

The application is based on these facts:

Please see the attached application of DEA Special Agent Justin Mason, which is incorporated by reference and has been reviewed by AUSA Lou Mattei.

☑ Continued on the attached sheet.

_____
*Applicant's signature*

Justin Mason, DEA Special Agent
*Printed name and title*

Telephonically sworn and electronically signed.

_____
*Judge's signature*

Date: __March 12, 2025__

City and state: __Albuquerque, New Mexico__

Laura Fashing, United States Magistate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| IN THE MATTER OF THE SEIZURE OF:<br><br>$186,645 OF U.S. CURRENCY. | Case No. _____ |

**AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A
WARRANT TO SEIZE PROPERTY SUBJECT TO FORFEITURE**

I, Justin Mason, Special Agent (SA) of the Drug Enforcement Administration (DEA), being duly sworn, state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I am an investigative law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7) as a Special Agent of the DEA. I am empowered by law to conduct investigations, make seizures of property, and make arrests as set forth in 21 U.S.C. § 878.

2. I have been a Special Agent with the DEA since October of 2020. I have attended the DEA Training Academy in Quantico, Virginia, where I received approximately 16 weeks of specialized narcotics related training. As part of the curriculum at the DEA academy, I received advanced training in controlled substance identification, narcotics related investigation techniques, interview and interrogation training, preparation of search warrants, tactical applications of narcotics enforcement, surveillance and electronic monitoring techniques. I have received training in the methods of operation of Drug Trafficking Organizations, and in the investigation of Title 21 violations. As a result, I am familiar with matters including, but not limited to, the means and methods used by individuals to purchase, transport, store, and distribute drugs and to hide profits generated from those transactions.

3. I make this affidavit based on my participation in the investigation, reports, and

1

information made available to me by other agents and Task Force Officers (TFOs), as well as other law enforcement authorities. Specifically, DEA is involved in this investigation, and I learned about it, primarily through a TFO who works for both Isleta Police Department (IPD) and the DEA and by reviewing reports from IPD. This affidavit is intended only to show that there is sufficient probable cause for the requested seizure warrant and does not set forth all my knowledge of the surrounding facts pertaining to this matter. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses.

## IDENTIFICATION OF PROPERTY TO BE SEIZED

3. I make this Affidavit in support of an application for the issuance of a warrant to seize the following property subject to forfeiture:

   a. Approximately $186,645 in U.S. currency seized from Rosie Marie Padilla following the execution of a search warrant at 82 Bonita Vista Blvd., Los Lunas, NM 87031 (hereinafter the "SUBJECT CURRENCY").

4. On March 3, 2025, I and another DEA agent took the SUBJECT CURRENCY to Loomis Armored Transport for an official count, which confirmed it to be $186,645. At that time, it was transferred into the custody of the U.S. Marshals Service, where it remains.

4. Based upon the facts detailed in this Affidavit, I believe there is probable cause that the SUBJECT CURRENCY represents (1) moneys furnished in exchange for a controlled substance, (2) moneys intended to be furnished in exchange for a controlled substance, (3) proceeds traceable to such an exchange, or (4) moneys used or intended to be used to facilitate the manufacture, distribution, or possession with intent to distribute a controlled substance, in violation of 18 U.S.C. § 841. Accordingly, the SUBJECT CURRENCY is subject to criminal

judicial forfeiture under 21 U.S.C. § 853(a) and to civil judicial forfeiture under 21 U.S.C. § 881(a). I am seeking a warrant authorizing the criminal seizure of the SUBJECT CURRENCY pursuant to 21 U.S.C. §§ 853(e) and (f), and civil seizure of the SUBJECT CURRENCY pursuant to 18 U.S.C. § 981(b) and 21 U.S.C. § 881(b).

## RELEVANT STATUTES

I.  **Criminal and Criminal Forfeiture Statutes**

9.  Title 21 United States Code § 841(a) provides that "[e]xcept as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; (2) to create, distribute, or dispense, or possess with intent to distribute or dispense, a counterfeit substance." 21 U.S.C. § 841(a). Subsection (b) designates the penalties corresponding to various controlled substances in various amounts. These controlled substances include methamphetamine and fentanyl. 21 U.S.C. § 841(b).

10. Title 21 United States Code § 846 provides that "[a]ny person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." 21 U.S.C. § 846.

11. Title 21 United States Code § 853(a) provides, in relevant part, the following: "Any person convicted of a violation of this subchapter or subchapter II punishable by imprisonment for more than one year shall forfeit to the United States, irrespective of any provision of State law— (1) any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation" and "any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation[.]"

3

12. Title 21 United States Code § 853(f) provides that "[t]he Government may request the issuance of a warrant authorizing the seizure of property subject to forfeiture under this section in the same manner as provided for a search warrant. If the court determines that there is probable cause to believe that the property to be seized would, in the event of conviction, be subject to forfeiture and that an order under subsection (e) may not be sufficient to assure the availability of the property for forfeiture, the court shall issue a warrant authorizing the seizure of such property."[1] 21 U.S.C. § 853(f).

13. Title 18 United States Code § 982(b)(1) provides that "[t]he forfeiture of property under this section, including any seizure and disposition of the property and any related judicial or administrative proceeding, shall be governed by the provisions of section 413 (other than subsection (d) of that section) of the Comprehensive Drug Abuse Prevention and Control Act of 1970 (21 U.S.C. 853)."

## II. Civil Forfeiture Statutes

14. Title 21 United States Code § 881(a)(6) provides that "[t]he following shall be subject to forfeiture to the United States and no property right shall exist in them: . . . (6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter." 21 U.S.C. § 881(a)(6).

---

[1] 21 U.S.C. § 853(e) provides for protective orders to restrain certain property or enjoin its use/alienation. This provision also provides for the execution of a performance bond or other action to preserve the availability of property for forfeiture. As described in more detail below, however, there is reason to believe that these measures would be insufficient to preserve the availability of the property for forfeiture in the present situation.

15. Title 21 United States Code § 881(b) provides that "[a]ny property subject to forfeiture to the United States under this section may be seized by the Attorney General in the manner set forth in section 981(b) of Title 18." 21 U.S.C. § 881(b).

16. Title 18 United States Code § 981(b)—which is referred to by 21 U.S.C. § 881(b) (above)—governs civil seizure and forfeiture of property by the Attorney General and other designated individuals.

17. Title 18 United States Code § 981(b)(2) provides, in relevant part, that "[s]eizures pursuant to this section shall be made pursuant to a warrant obtained in the same manner as provided for a search warrant under the Federal Rules of Criminal Procedure." 18 U.S.C. § 981(b)(2).

18. Title 21 United States Code § 881(e) provides for the disposition of property civilly or criminally forfeited pursuant to federal narcotics statutes.

## PROBABLE CAUSE

### I. Overview of Investigation

19. Over the past six months, Isleta Pueblo Police Department (IPD) has been investigating Rosie PADILLA for drug-trafficking activities in and round the Los Lunas, New Mexico, area. As a result of the investigation, law enforcement officers learned that PADILLA has been trafficking methamphetamine and fentanyl from her residence in Los Lunas. The investigation further revealed that PADILLA utilized her residence to store proceeds from drug sales, and that she has not had any form of legitimate income over the past four years.

### II. Controlled Purchases from PADILLA

20. Between January 2025 and February 2025, IPD Detectives conducted three controlled purchases of drugs from PADILLA. The three controlled purchases were completed

5

using two confidential informants (CIs). During the transactions described below, law enforcement maintained close surveillance of the CIs to independently verify their activities.

21. In January 2025, IPD conducted the first buy-walk operation with PADILLA and an IPD confidential informant (CI-1).[2] Prior to the operation, IPD detectives set up surveillance in the area of PADILLA's residence at 82 Bonita Vista Blvd., Los Lunas, NM 87031. PADILLA exited her residence and entered a brown Ford F-250 truck. PADILLA drove straight to a prearranged meet location where CI-1 was waiting. PADILLA and CI-1 met, and CI-1 purchased 50 fentanyl pills for the price of $300 from PADILLA. The pills later field-tested positive for fentanyl.

19. In February 2025, IPD conducted a second buy-walk operation with PADILLA and CI-1. Prior to the operation, IPD detectives again set up surveillance in the area of PADILLA's residence. PADILLA again exited her residence and entered a brown Ford F-250 truck. PADILLA again drove straight to the meet location. PADILLA and CI-1 met and were observed interacting. During this operation, CI-1 purchased 50 fentanyl pills for the price of $300 from PADILLA. The pills later field-tested positive for methamphetamine.

20. Later in February 2025, IPD conducted a third buy-walk operation with PADILLA and a second confidential informant (CI-2).[3] Prior to the operation, IPD detectives again set up surveillance in the area of PADILLA's residence. Detectives observed CI-2 arrive at PADILLA's residence. A short time later, PADILLA arrived at her residence. Detectives observed both PADILLA and CI-2 enter into PADILLA's residence. During this operation, CI-2 purchased

---

[2] CI-1 is working for consideration on potential state drug trafficking charges. CI-1's criminal history includes an arrest or conviction for distribution of marijuana from 2006. CI-1 knows PADILLA from having purchased illegal drugs from PADILLA through a friend for over a year. CI-1's information has been corroborated or otherwise proven reliable in the course of this investigation.

[3] CI-2 is working for consideration on potential state drug trafficking charges. CI-2 has no criminal history known to agents. CI-2 knows PADILLA from having purchased illegal drugs from her for multiple years in the past. CI-2's information has been corroborated or otherwise proven reliable in the course of this investigation.

a quarter ounce of methamphetamine for $100 from PADILLA inside PADILLA's residence. The methamphetamine later field-tested positive.

### III. Search Warrant at PADILLA's Residence

21. On February 12, 2025, IPD Detective Romero obtained a New Mexico state search warrant through the Thirteenth Judicial District Court (D-1314-SW-2025-00037) to search PADILLA's residence—82 Bonita Vista Blvd., Los Lunas, NM 87031.

22. On February 18, 2025, Detectives and Valencia County Sheriff's Office S.W.A.T. executed the state search warrant at PADILLA's residence. During the execution of the search warrant, Detectives made contact with PADILLA within the residence and detained her. Officers also encountered PADILLA's daughter at the residence, but she was released following the search, as agents determined she was not involved in PADILLA's drug trafficking activities.

23. Detectives advised PADILLA of her *Miranda* rights. She agreed to waive those rights and speak with detectives. Based on my review of reports of the interview, PADILLA stated, in sum and substance, that she stored her drugs in her bathroom—in a pink storage container with two locks attached to it—and offered to show Detectives the exact location. IPD Detectives retrieved the container from the location that PADILLA described.

24. Within the container, Detectives located, among other things:

    a. Approximately 3,126 blue round pills stamped with M-30, which filed-tested positive for fentanyl; based on my training and experience, this quantity of fentanyl is consistent with distribution, not personal use, and has an approximate street value of $6,000; and

    b. Approximately 4.0 pounds of a clear crystal-like substance that field-tested

7

positive for methamphetamine; based on my training and experience, this quantity of methamphetamine is consistent with distribution, not personal use, and has an approximate street value of $8,000.

25. Within PADILLA's bedroom, Detectives located a grey bag containing multiple plastic wrappings containing a total weight of 206.99 gross grams of a white powdered substance that field-tested positive for cocaine. Based on my training and experience, this quantity of cocaine is consistent with distribution, not personal use, and has an approximate street value of $3,600.

26. Detectives found three black safes located together in the residence. PADILLA acknowledged knowing the lock combination to at least one of the safes, which she then unlocked. The three safes contained, in aggregate, the SUBJECT CURRENCY. One of them also contained a TEC DC-9 black handgun. Based on my training and experience, I know it is common for drug traffickers to possess firearms to protect themselves, their drug supplies, and their drug proceeds.

19. During the interview of PADILLA, PADILLA further admitted to Detectives that she does not work and that she makes a majority of her money by selling narcotics. This admission has been corroborated by records from the New Mexico Department of Workforce Solutions, which show that PADILLA has not held any legitimate employment in the state of New Mexico between at least January 2021 and January 2025. PADILLA also confirmed that she mainly sold drugs out of her residence.

20. Following a preliminary money count by IPD, officers asked PADILLA to sign a document stating the approximate amount of money seized. Upon doing so, PADILLA informed

detectives that she didn't know how much money she had within the safes.

IV. **Other Efforts to Restrain or Enjoin the SUBJECT CURRENCY**

21. Based on my training and experience, I believe that efforts to restrain or enjoin the use of the SUBJECT CURRENCY pursuant to 21 U.S.C. § 853(e) would be insufficient to maintain the property for forfeiture unless they amounted to maintaining the property in the custody of the United States without allowing any use or dissipation (which is essentially the effect of the requested Seizure Warrant). Cash is a liquid asset that is easy to dissipate and difficult to trace. Furthermore, the SUBJECT CURRENCY constitutes evidence of violations of Title 21 United States Code 841 and should be maintained in the custody of United States to facilitate its evidentiary use, as well as its forfeiture.

## CONCLUSION

28. Based on the above facts and circumstances, there is probable cause to believe that the aforementioned SUBJECT CURRENCY represents proceeds of illegal drug trafficking, money to be furnished in exchange for controlled substances, or money used or intended to be used to facilitate illegal drug trafficking in violation of Title 21 United States Code section 841. As such, the SUBJECT CURRENCY is subject to seizure and forfeiture to the United States Government pursuant to Rule 41 of the Federal Rules of Criminal Procedure, Title 18 United States Code sections 981 and 982, and Title 21 United States Code sections 853(a) and 881(a)(6).

29. This Affidavit was reviewed and approved by AUSA Lou Mattei.

30. I declare under penalty of perjury that the information contained in this Affidavit is true and correct to the best of my knowledge.

[Signature blocks on next page]

Respectfully submitted,

*Justin Mason*
Special Agent
U.S. Drug Enforcement Administration
Albuquerque District Office

Electronically signed and telephonically sworn
On this 12th day of March 2025:

*Honorable Laura Fashing*
United States Magistrate Judge

10